Bradbury, J.
The lands of Ludwig lie west, and those of Hills, east of the disputed line, and this line was originally identical with that between sections five and six in which the lands lie. This section line had been the subject of dispute between adjoining proprietors for many years prior to 1860. Early in that year an agreement was made between a number of land owners in those sections for a survey of this line, which survey, pursuant thereto, was made in March 1860, by Horace Martin, the then county surveyor. At the same time, and as part of the same plan, the north and south middle line of section six was surveyed. By this survey both lines were located further west than they were before, so that Ludwig gained thereby on the west, substantially the quantity of land he lost on the east. Soon thereafter Ludwig, Hills’ grantors and some other adjoining owners, began to occupy and improve their lands according to the new line (which was called the Martin line), though with considerable dissatisfaction and some litigation between certain of the adjoining proprietors respecting it. Soon after this line was, established, Hills purchased *376 lands lying east of and adjoining those of Ludwig, and also a tract adjoining Ludwig on the west, both of which be has continued to occupy and improve ever since, up to the Martin line. Twenty years and ten months elapsed from the time Ludwig went out of possession of the lands in dispute until this action was begun, and more than twenty-two years elapsed before the amended petition was filed. The trial resulted in a verdict and judgment for Ludwig for the recovery of all the lands described in his amended petition. Hills took a bill of exceptions which exhibits, among others, the facts above stated. It also discloses certain exceptions taken by Hills to the rulings of the trial court in admitting and rejecting evidence, and in charging and refusing to charge the jury certain propositions of law. The judgment was affirmed by the circuit court, whereupon the defeated party brought the case here for review.
Some of the interesting questions, argued by counsel for plaintiff in error, are not presented by the record in a way to enable this court to review them upon their merits. This is notably the case with respect to two important questions— alluded to by counsel for plaintiff, in his brief — that of estoppel, and that relating to the rejection of the evidence of Mill-iron, respecting the acts and admissions of the plaintiff below, Ludwig.
The question of estoppel is raised by the fourth defense. That defense, plaintiff in error claims, sets forth facts which estop Ludwig from asserting his title to the lands in dispute; or at least, that he ought not to be permitted to do so, even if he was honestly mistaken in supposing the Martin line to be the true one, until he first offered to yield up to Hills the equivalent therefor, which he still holds on the west side of his farm ; and there is evidence tending to establish this defense. It is a grave question whether Ludwig can be permitted to repudiate the Martin line on one side of his laud, where it cuts a strip from his farm, and cling to it on the other side, where it gives him a strip of land that otherwise yrould belong to Hills. The court said nothing to the jury on this question that is applicable to the facts as Hills claims. *377 them to be, and there is nothing in the record to show whether it was considered by the jury or not. This omission, standing alone, does not constitute error, for which the judgment will be reversed by this court. Taft v. Wildman, 15 Ohio, 123; Jones v. Ohio, 20 Ohio, 34; Schryver v. Hawkes et al., 22 Ohio St. 308 ; Smith v. R’y, 23 Ohio St. 10.
The defendant below, however, did request instructions on this point which the court refused to give to the jury; but these instructions, while fairly applicable to a state of facts testified to by Hills, were not, at least, fully applicable to the facts pleaded by Hills in his fourth defense; and for that reason the refusal was not error. In addition to this, Hills, when he requested the charge on this point, also requested the court to give to the jury eight other propositions of law, some of which being unsound, were properly refused; while others, containing sound legal propositions, should have been given to the jury if presented by themselves. All, however, were refused; but the exception thereto being general, it failed to point out to the court the error of which complaint is'now made, and for that reason error can not be predicated on this action of the trial court. Railway v. Probst, 30 Ohio St. 104; Everett Weddell & Co. v. Summers, 32 Ohio St. 562; Powers v. R’y Co., 33 Ohio St. 429.
It remains apparent, however, that the court did not instruct the jury on. this point, notwithstanding its attention was called to the matter, though done through the medium of an instruction it was not error to refuse to give to the jury; and it may be said that the record raises the question whether it is error for the court to fail to give instructions on a question involved in the trial, when, by any means, its attention is directed to it. The record, however, does not disclose that this question was made to the trial court on the motion for a new trial, or to the circuit court on error, and there is nothing in this case that calls for us to disregard the general rule, that errors, not assigned in the courts below, will not be considered here. Levi v. Daniels, 22 Ohio St. 38. The rule applies with special emphasis to the case at bar, for the additional reason, that that omission is not especially assigned *378 in this court of error, but is insisted on in argument only, as an error appearing on the face of the record. We, therefore, hold that the question- is not properly before us for review.
Respecting the evidence of the witness, Mill iron, it may be said, that while, as a general proposition of law, the pertinent acts and admissions of a party are competent evidence against him, yet, unless they are offered at the proper time, it is within the discretion of the court to admit or reject them; and unless the record discloses an abuse of discretion, its action will not be reviewed on error. Webb v. State, 29 Ohio St. 351.
If, on the trial, Milliron’s evidence was competent at all, it was evidence in chief for the defendant, Hills. He did not offer it then, and without explaining the omission, offered it in rebuttal; under these circumstances the actio.n of the trial court in rejecting the evidence does not appear to be erroneous.
The trial court admitted in evidence, over the objection of Hills, the record of an action brought in 1865, by Rufus Page, against the plaintiff below, Ludwig. This action related to the north and south line (before referred to), that divided section six into half sections, and which was run and established at the same time, and was part of the scheme of the “Martin” survey. If that line had been placed too far west by the Martin survey, then the line in dispute had been also placed the same distance too far west. This record shows that Page, under whom Hills claimed title, alleged that the middle line of section six was too far west, and that he prevailed in the action. Now, this allegation and adjudication coming to the ears of the jury, could not be otherwise than prejudicial to Hills; and, if incompetent evidence, is error to his prejudice. It is not merely an admission, but a sworn statement made by one under whom Hills claims title, that the line is not where Hills claims it to be. Now, if it had been made while Page owned the land, especially if it related to the line of the land Hills afterward bought, it would have been admissible against Hills. But this was not the case; it related to other lands, and was made long after Hills had acquired his title. Page, at the time, had no interest in this land of Hills’, and could *379 not, by any act, admission or statement, make evidence against Hills. It was therefore error to admit the record in evidence. For the same reasons the agreement between Page and Ludwig, and the record of the action between Ludwig and Frey, were incompetent evidence, and their admission erroneous.
The defendant below specially excepted to certain propositions contained in the charge of the court; these charges are ¡properly before us for review and will now be considered.
Hills excepted to the rule laid down by the court inspecting .the method of retracing the line between sections five and six. 'This was an important question in the trial court, and might .have been decisive, in view of the evidence then adduced; but we have no assurance that the evidence at the next trial will be the same that it was at the last one in this respect. This is a species of evidence peculiarly liable to change. A mew line, run even by the same surveyor upon the same principle, may vary considerably from the former line run by him, according to the method approved by the court below. New corners may be found, or new lines run, or new facts ■discovered that would render the view this court might take wholly inapplicable; and, besides, the other principles laid ■down by the court are likely to be decisive of the rights of -these parties.
The court charged the jury that the contract or agree.ment, by which a boundary" line could be established, must be one “ That would transfer the title or right of pos■session to defendant Hills.” This was stating the rule too .strongly against Hills. The second clause of the syllabus, in Bobo v. Richmond, 25 Ohio St. 115, reads: “The fixing of a ■boundary line by parol is not within the operation of the ■statute of frauds. No estate is thereby created; but where the boundary line is fixed by the parties they hold up to it by virtue of their title deeds, and not by virtue of the parol .transfer.” The language of the charge is calculated to impress the jury with the belief that an agreement to adjust and settle a boundary line must be one sufficient to transfer title •or right of possession by its inherent force, independent of the -acts of the parties pursuant thereto. This is contrary to the *380 syllabus above quoted. Hills did not rest his defense upon the agreement alone, but upon it and the acts of the adjoining owners, done pursuant thereto, and the charge ought to have-been as broad as the defense in this particular.
The court also charged the jury that: “When the line between owners of land can not with certainty be ascertained, and said owners, in view of this, agree upon and establish a line, such an agreement settles the line.” It is-claimed in argument, that the defendant below was not prejudiced by this charge, even if it is incorrect, because no evidence was given on the trial, which tended to prove any such agreement. To this claim it may be said, that what the parties to this survey said and did, was before the jury, and it was competent for them to determine what their object was in causing it to be made. Ludwig claimed their purpose was to-ascertain the true line; that he supposed they had done so;, that he knew no better for many years thereafter; and that when he discovered the mistake he endeavored to correct it. Hills, on the other hand, claimed the purpose of the survey was not to find the true line, but to adjust and settle one which had long been the subject- of contention, and about which there was then a dispute. This being the issue, the court, we think, placed the right of adjoining proprietors to adjust and settle disputed boundaries on too narrow a basis.
It is not essential that the disputed boundary line be incapable of ascertainment; but if it has become the subject of dispute and contention, and the parties with a view to settle-the dispute, agree upon and adjust a line between their land, it is a finality and can not be disturbed — though they after-wards learn that the true line could have been found. Avery’s Lessee v. Baums Heirs, Wright 576 ; Walkr v. Lessee of Devlin, 2 Ohio St. 593.
This view is entirely consistent with the principle that where adjoining proprietors, in attempting to find the true line between them, by mistake fix upon an incorrect one, they may repudiate the spurious line on discovering the mistake, and occupy to the true line at any time before the statute of limitations has run.
*381 The court further charged the jury that “ this action was commenced January 11th, 1881; it is conceded that was 20 years and 10 months after the plaintiff went out of possession of the premises, therefore the statute of limitations does not apply.” This statement ignores the fact that part of the lands sought to be recovered were not described in the original petition. Over 22 years had in fact elapsed from the time plaintiff below went out of possession, before he filed his amended petition, so that, as to the land then for the first time included, the statute of limitations had attached, and the defendant’s title made perfect by lapse of time, unless the amendment had a retro-active operation, and went back, by relation, to the original petition. This proposition, we think, is not supported by either reason or authority.

Judgment reversed.